UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
U.S. AIRLINE PILOTS ASSOCIATION, by its President
Michael J. Cleary,

                            Plaintiff,

            -against-

SEHAM, SEHAM, MELTZ & PETERSEN, LLP,
LEE SEHAM, LOUIS MELTZ, and
SCOTT PETERSEN,

                         Defendants.
-------------------------------------------------------------------X

12-CIV-

**JUDGE RAMOS**

# 12 CV 1981

**COMPLAINT**

*[Stamp: RECEIVED MAR 16 2012 U.S.D.C. S.D.N.Y. CASHIERS]*

      Plaintiff U.S. AIRLINE PILOTS ASSOCIATION (hereinafter "USAPA"), by its President

Michael J. Cleary, by and through its attorneys, O'DWYER & BERNSTIEN, LLP, as and for its

Complaint, respectfully alleges as follows:

## NATURE OF ACTION

    1.    This is an action to recover damages for attorneys fees paid to defendants that were

the result of overbilling and other billing irregularities over a several year period.

## JURISDICTION AND VENUE

    2.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332, in that the

parties are citizens of different states and the amount in controversy exceeds the sum of $100,000.

    3.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §

1391(a), in that it is the district where defendants maintain their principal place of business and

where, upon information and belief, a substantial part of the events and/or omissions giving rise to

the action occurred.

## PARTIES

4.      USAPA is a private, unincorporated association operating as a labor organization and is the certified collective bargaining representative of US Airways pilots.  USAPA has its principal place of business located at 200 E. Woodlawn Road, Suite 250, Charlotte, North Carolina, 28217.  Michael J. Cleary is the President of USAPA and appears in his representative capacity.

5.      Upon information and belief, at all relevant times defendant SEHAM, SEHAM, MELTZ & PETERSEN, LLP (hereafter "SSM&P") was a limited liability partnership registered to do business in the State of New York with its principal place of business located at 445 Hamilton Avenue, Suite 1204, White Plains, New York 10601.

6.      Upon information and belief, at all relevant times defendant SSM&P was a law firm providing legal services to clients within the State of New York and elsewhere.

7.      Upon information and belief, at all relevant times herein, defendant LEE SEHAM was a citizen of the State of New York.

8.      Upon information and belief, at all relevant times herein, defendant LEE SEHAM was an attorney licensed to practice in the State of New York.

9.      Upon information and belief, at all relevant times herein, defendant LEE SEHAM was a partner of SSM&P.

10.      Upon information and belief, at all relevant times herein, defendant LOUIS MELTZ was a citizen of the State of New York.

11.      Upon information and belief, at all relevant times herein, defendant LOUIS MELTZ was an attorney licensed to practice in the State of New York.

12.      Upon information and belief, at all relevant times herein, defendant LOUIS MELTZ was a partner of SSM&P.

13.     Upon information and belief, at all relevant times herein, defendant SCOTT PETERSEN was a citizen of the State of New York.

14.     Upon information and belief, at all relevant times herein, defendant SCOTT PETERSEN was an attorney licensed to practice in the State of New York.

15.     Upon information and belief, at all relevant times herein, defendant SCOTT PETERSEN was a partner of SSM&P.

## FACTS

16.     In or about July 2007, USAPA and SSM&P entered into a written fee agreement ("Fee Agreement") whereby USAPA retained defendants to provide legal services and advice "concerning various labor issues." (Fee Agreement, annexed hereto as Exhibit "1", ¶1).

17.     The Fee Agreement was drafted by defendants.

18.     The Fee Agreement provides that it covers general legal advice concerning labor issues, specifically excluding litigation.

19.     The Fee Agreement provides for specified billing rates for particular categories of providers.

20.     The Fee Agreement purports to comply with New York laws governing attorney retention.

21.     Upon information and belief, the Fee Agreement has not been superseded by any other agreement.

22.     Upon information and belief, the Fee Agreement has not been modified.

23.     Upon information and belief, no other written fee agreement or retainer was ever entered into by and between USAPA and defendants.

24.     Subsequent to July 2007, defendants provided legal services to USAPA consisting of general labor advice for which it billed USAPA.

25.     Subsequent to July 2007, defendants provided legal services to USAPA consisting of representation in litigation for which it billed USAPA.

26.     Upon information and belief, defendants submitted invoices to USAPA for services rendered generally on a monthly basis.

27.     Upon information and belief, from July 2007 to December 2011, defendants billed USAPA the total sum of $7,559,199.16 for legal services and expenses.

28.     Upon information and belief, to date, USAPA has paid defendants' invoices totaling $7,409,199.16.

29.     In or about October, 2011, USAPA retained Sarah Diane McShea, Esq., as counsel to conduct an independent review of legal bills and invoices rendered by defendants.

30.     By letter dated October 17, 2011, Ms. McShea contacted defendants advising of her retention and the independent review and requested documents and access to records relating to defendants' invoices to USAPA.

31.     Ms. McShea retained the services of accounting firm Holtz, Rubenstein & Reminick, LLP to assist her with the independent review of defendants' invoices to USAPA.

32.     Upon information and belief, from October, 2011 to in or about February, 2012, Ms. McShea made repeated requests and attempts to obtain routine billing information and backup from defendants.

33.     Upon information and belief, from October, 2011 to in or about February, 2012, Ms. McShea made repeated requests and attempts to obtain access to defendants' billing system and underlying data files.

4

34.     Upon information and belief, from October, 2011 to in or about February, 2012, Holtz, Rubenstein & Reminick, LLP made repeated requests and attempts to obtain routine billing information and backup from defendants.

35.     Upon information and belief, from October, 2011 to in or about February, 2012, Holtz, Rubenstein & Reminick, LLP made repeated requests and attempts to obtain access to defendants' billing system and underlying data files.

36.     Upon information and belief, despite repeated attempts from October, 2011 to date, defendants have failed and refused to cooperate with requests for billing information necessary for the performance of the independent review of defendants' invoices.

37.     Upon information and belief, defendants have deliberately frustrated independent counsel's review of its legal invoices.

38.     Upon information and belief, defendants' lack of cooperation with the independent review of their invoices and its attempts to frustrate the independent review process is without justification.

39.     Upon information and belief, defendants' lack of cooperation with the independent review of their invoices has been undertaken to impede and ultimately prevent an independent review of its invoices to USAPA.

40.     Despite defendants' failure and refusal to cooperate and provide billing and related information as set forth above, preliminary review of defendants' invoices shows numerous questionable billing practices, including, *inter alia*, inordinate hours billed in one day, erroneous billing rates, multiple billing entries with duplicate or substantially similar descriptions of work, billing in excess of capped per diem rates, and statistically improbable rounding of time entries.

41.    Upon information and belief, defendants overbilled USAPA for legal services from July 2007 to and including December, 2011, by, *inter alia*, billing at rates for providers higher than those provided for by the Fee Agreement (including billing providers at an hourly rate and a per diem rate for the same services); billing for duplicate billing entries, and billing for work not actually performed.

42.    Upon information and belief, defendants' overbilling was widespread, deliberate, intentional and/or systematic.

43.    Upon information and belief, defendants overbilled USAPA in an amount that cannot be determined precisely at present but is reasonably estimated to exceed $100,000 based upon the preliminary review of its billing invoices.

## CLAIM I

### BREACH OF CONTRACT

44.    USAPA repeats and realleges the allegations in paragraphs 1-43, inclusive, as if set forth fully herein.

45.    The Fee Agreement was a valid and binding contract between USAPA and defendants.

46.    Upon information and belief, from July 2007 to December 2011, defendants overbilled USAPA for legal services.

47.    Upon information and belief, defendants' overbilling was persistent and widespread in its monthly invoices to USAPA from July 2007 to December, 2011.

48.    The Fee Agreement provides that defendants were entitled to bill only for services actually rendered and at the rates provided for therein.

49.     Defendants breached the Fee Agreement by billing for time in excess of time actually worked.

50.     Defendants breached the Fee Agreement by billing at rates in excess of the rates provided for in the Fee Agreement.

51.     The overbilling by defendants constitutes a breach of the Fee Agreement.

52.     USAPA has been damaged by reason of, *inter alia*, defendants' breach of contract and overbilling in an amount presently unknown but reasonably believed to be in excess of $100,000.

## CLAIM II

## BREACH OF FIDUCIARY DUTY

53.     USAPA repeats and realleges the allegations in paragraphs 1-52, inclusive, as if set forth fully herein.

54.     At all relevant times herein, by virtue of the attorney client relationship formed by and arising out of the Fee Agreement, USAPA reposed great trust in defendants, including, *inter alia*, that defendants' invoices were for services actually rendered, accurately set forth hours worked, and were accurate and worthy of trust.

55.     At all relevant times herein, defendants knew that USAPA reposed great trust in defendants, including, *inter alia*, that defendants' invoices were for services actually rendered, accurately set forth hours worked, and were accurate and worthy of trust.

56.     At all relevant times herein, defendants encouraged USAPA to repose trust in them, including, *inter alia*, that defendants' invoices were for services actually rendered, accurately set forth hours worked, and were accurate and worthy of trust.

57.    At all relevant times herein, defendants knew that USAPA relied upon the trust defendants encouraged USAPA to repose in it with respect to defendants' invoices rendered for legal services.

58.    By reason of the foregoing, there existed a fiduciary relationship between USAPA and defendants.

59.    Upon information and belief, from July 2007 to December 2011, defendants overbilled USAPA as aforesaid.

60.    Upon information and belief, defendants' overbilling, among other acts and conduct, constitutes a breach of fiduciary duty.

61.    By reason of the foregoing breaches of fiduciary duty, USAPA has been damaged in an amount presently unknown but reasonably believed to be in excess of $100,000.

<u>**CLAIM III**</u>

**BREACH OF DUTY TO PROVIDE BILLING RECORDS**

62.    USAPA repeats and realleges the allegations in paragraphs 1-61, inclusive, as if set forth fully herein.

63.    At all relevant times herein defendants were fiduciaries and agents of USAPA.

64.    At all relevant times herein, defendants owed a duty to USAPA of openness and conscientious disclosure.

65.    At all relevant times herein, defendants' duty of openness and conscientious disclosure included a duty to disclose their invoices, back-up billing records, and computer files from which its invoices are generated.

66.    By their refusal and failure to provide billing records in connection with the review

8

and audit of their billing invoices defendants have breached their duty of openness and
conscientious disclosure to USAPA.

    67.    Plaintiff hereby requests a trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs demand judgment against defendants, jointly and severally, as
follows:

(A)    Damages in an amount presently unknown but reasonably believed to be in
excess of $100,000;

(B)    Order compelling defendants to provide records to USAPA, including but
not limited to its billing records, all back-up data, and access to their
automated billing system;

(C)    Awarding USAPA its reasonable costs and attorneys fees associated with
this proceeding; and

(D)    Such other and further relief as the Court deems equitable and just.

Dated: March 16, 2012
      New York, New York

Yours, etc.,

O'DWYER & BERNSTIEN, LLP

By: _____
BRIAN O'DWYER (BOD 9522)
GARY SILVERMAN (GS 9287)
Attorneys for Plaintiff
52 Duane Street, 5th Fl.
New York, New York 10007
(212) 571-7100

# EXHIBIT A

## FEE AGREEMENT

Thank you for retaining our firm to represent you in this matter. This Fee Agreement will serve to confirm the contractual relationship between: Seham, Seham, Meltz & Petersen, LLP., ("SSM&P") and USAirline Pilots Association (the "Client").

1.    The Client hereby retains SSM&P to advise it concerning various labor issues. No litigation is contemplated by the parties at this time and, therefore, this retainer does not cover the performance of any litigation.

2.    The Client hereby agrees to pay SSM&P.

      SSM&P will also be entitled to reimbursement for expenses incurred on the behalf of Client, such as court filing fees, photocopying, postage, long distance telephone, faxes and the like. Statements for services and disbursements will be rendered periodically and are payable on receipt.

3.    The Client understands and agrees that the above-mentioned fee relates to the performance of legal proceedings based on the law and the facts in effect at the date of this agreement and does not include legal services in connection with any other matters not referenced herein, including, but not limited to the following:

      All fees with regard to the performance of these legal services will be billed at SSM&P's standard hourly rate(s) for labor unions of $250.00 per hour for partners, $225.00 per hour for senior associates, $200.00 per hour for junior associates, and $100.00 per hour for paralegals, *provided that,* **the client will only be required to pay 50% of the fees due on each invoice until such time as the Client is certified by the National Mediation Board, at which time the remainder will become due and owing. If the client is unsuccessful in obtaining certification, the unpaid portion will be forgiven.** This deferment of payment does not apply to costs.

      FAILURE TO PAY FEES FOR LEGAL SERVICES AND DISBURSEMENT COSTS WILL ENTITLE SSM&P TO WITHDRAW AS CLIENT'S ATTORNEYS AND RETAIN ALL PAPERWORK AND FILES THAT IT MAY HAVE IN ITS POSSESSION WITH REGARD TO THIS MATTER. SSM&P WILL ALSO HAVE THE RIGHT TO WITHDRAW AS CLIENT'S COUNSEL IF CLIENT DOES NOT MEET ITS OBLIGATIONS UNDER THIS AGREEMENT, INCLUDING, BUT NOT LIMITED TO THE PAYMENT OF COSTS AND THE PROVIDING OF NECESSARY INFORMATION ON A TIMELY BASIS.

4.    Notwithstanding principles of conflict of law of any jurisdiction to the contrary, the parties agree that all terms and provisions of this agreement shall be construed and governed by the laws of the State of New York without regard to the laws of any other jurisdiction wherein the Client resides. Any suit, action or other legal proceeding arising

1

out of or relating to this agreement, or its breach, excluding fee disputes, shall be settled by arbitration held in New York, in accordance with the rules of the American Arbitration Association. As part of any arbitral award, the arbitrator shall require the losing party to pay the attorney's fees and administrative costs of the prevailing party. In the event that a dispute arises between the parties relating to SSMP's fees, Client may have the right to arbitration of the dispute pursuant to New York State law.

5.    SSM&P and Client agree to use their best efforts in furthering the purposes of this Fee Agreement but the Client understands and agrees that the fees set forth are payable in full at the time indicated above and that SSM&P is entitled to cease providing services if fees and/or disbursements remain outstanding. Client has the right to discharge SSM&P as its attorneys at any time but SSM&P has the right to retain all the files and papers relating to Client's matter until all fees, costs and disbursements have been paid in full.

6.    SSM&P does not give assurances or guarantees of success and fees are fully earned solely by SSM&P furnishing its best efforts in representing the interests of the Client. SSM&P will make every effort to handle your matter professionally and promote your interests vigorously and efficiently. SSM&P cannot predict the outcome or promise that its efforts will be successful or that the Client will realize any particular goal. If Client withdraws from the case after SSM&P opens a file and commences with legal proceedings, the parties agree that all outstanding fees shall be due and payable and that SSM&P will be obligated to refund any unused fees and that all unpaid costs, disbursements or outstanding fees shall be due and payable by Client.

7.    This Fee Agreement supersedes any prior agreement whether oral or in writing and constitutes the entire agreement between the parties. All prior understandings, terms or conditions are deemed merged into this agreement. No alterations, amendments or modifications to this agreement shall be regarded as valid or enforceable unless reduced to writing and signed by both parties.

8.    Either party, insofar as it relates to services not already performed, may terminate this Fee Agreement, at any time and its terms and conditions may be reexamined and amended at any time, should the parties so agree in writing.

2

9.     SSM&P and Client agree that executed copies of this Agreement may be delivered by facsimile or PDF, which shall be binding on the parties instead of original signatures.

10.    If this Fee Agreement satisfactorily sets forth the terms of our relationship, please execute it ~~in duplicate~~ and return ~~both documents~~ by fax or PDF to our offices ~~with the following:~~

Advance Payment made payable to:

☐   "Seham, Seham, Meltz & Petersen, LLP"                    $

---

**Our obligation as your attorneys will not commence until we receive this payment**

---

Accepted and agreed to by:

Signature: _Stephen H. Bradford_         Date: July _9_ , 2007.
Print Name: _Stephen H. Bradford_
Address: _1019 Old Washington Rd_
Telephone: _McMurray, PA 15317_         phone (724) 942-0746 home
                                                        (724) 413-6703 cell

                                                        Date: July ____ , 2007.

Seham, Seham, Meltz & Petersen, LLP
By: Lee Seham
445 Hamilton Avenue
Suite 1204
White Plains, NY 10601
Tel. (914) 997-1346
Fax (914) 997-7125

3